**IJH Law**
Ignacio Hiraldo, Esq.
(*pro hac vice*)
1200 Brickell Ave.
Suite 1950
Miami, FL 33131
E: IJhiraldo@IJhlaw.com
T: 786-496-4469

*Attorney for Plaintiff and Proposed Class*

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| **Phoebe Black,** individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> **Drivetime Car Sales Company, LLC,** <br><br> Defendant. | Case No. 2:20-cv-02406-JJT <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT** <br><br> (JURY TRIAL DEMANDED) |

## FIRST AMENDED CLASS ACTION COMPLAINT[1]

Plaintiff, Phoebe Black, brings this action against Defendant, Drivetime Car Sales Company, LLC, to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

## NATURE OF THE ACTION

1.   This is a putative class action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq*. (the "TCPA").

---

[1] Plaintiff hereby amends as a matter of course pursuant to Federal Rules of Civil Procedure 15(a)(1)(B). *See also, Lemberg v. Lularoe,* No. ED CV 17-02102-AB (SHKx), 2018 U.S. Dist. LEXIS 239291, at *8 (C.D. Cal. Mar. 1, 2018) ("The Court finds that [defendant's] Motion to Compel Arbitration is akin to a motion under Rule 12(b) or a responsive pleading, Plaintiff was permitted to file an amended complaint once as a matter of right under Rule 15(a)(1)"); *Sherwood Mktg. Grp., LLC v. Intertek Testing Servs., N.A.*, No. 3:17-cv-00782-BEN-NLS, 2018 U.S. Dist. LEXIS 141026, at *7-8 (S.D. Cal. Aug. 20, 2018).

2. Defendant operates as a used car retailer with approximately 138 locations nationwide.

3. Defendant uses an automatic telephone dialing system to send mass automated marketing calls and text messages to individuals' cellular phone numbers without first obtaining the required express written consent.

4. Defendant also violates the TCPA's Do Not Call ("DNC") regulations by placing solicitation calls to individuals who have registered their telephone numbers on the national DNC registry.

5. Through this action, Plaintiff seeks injunctive relief to halt Defendant's unlawful conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals. Plaintiff also seeks statutory damages on behalf of themselves and members of the Class, and any other available legal or equitable remedies.

## JURISDICTION AND VENUE

6. This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq*. ("TCPA").

7. The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant directs, markets, and provides its business activities to this District, and because Defendant's unauthorized marketing scheme was directed by Defendant to consumers in this District, including Plaintiff.

## PARTIES

8. Plaintiff is a natural person who, at all times relevant to this action, was a resident of the State of North Carolina.

9. Defendant is an Arizona corporation whose principal office is located at 1720 W Rio Salado Parkway, Tempe Arizona 85281. Defendant directs, markets, and provides its business activities throughout the state of Arizona.

10. Unless otherwise indicated, the use of Defendant's name in this Complaint

includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, vendors, and insurers of Defendant.

## **THE TCPA**

11. The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

12. The TCPA exists to prevent communications like the ones described within this Complaint. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

13. In an action under the TCPA, a plaintiff must show only that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

14. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

15. In 2012, the FCC issued an order further restricting automated <u>telemarketing</u> calls, requiring "prior express <u>written</u> consent" for such calls. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

16. To obtain express written consent for telemarketing calls, a defendant must

establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

17. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

18. "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id.* (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

19. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

20. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future. Id.*

21. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules*

FIRST AMENDED COMPLAINT
4

*and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

22.     If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

## FACTS

23.     Beginning in April of 2020, Defendant placed multiple marketing calls and text messages using an ATDS to Plaintiff's cellular telephone number ending in 5194 ("5194 Number").

24.     For example, the calls placed by Defendant included, but are not limited to, a text message call November 17, 2020, which stated:

> Great news Phoebe, DriveTime has added 3k vehicles to our inventory! Re-run your approval and get your down payment at sonr.in/AZJYR2 or call your nearest dealership at (919) 334-0124 to get your financing terms over the phone in less than 10 minutes. Message HELP if you have any questions or would like to set your appointment, STOP to opt out.

25.     At the time Plaintiff received these calls and messages she was the subscriber and/or sole user of the 5194 Number.

26.     The 5194 Number is Plaintiff's personal cell phone number and not a business phone number.

27.     The 5194 Number has been registered with the National Do Not Call Registry since April 24, 2018.

28.     Defendant's text messages and calls constitute telemarketing, advertising, or solicitations because they promote Defendant's business, goods and services.

29.     The hyperlink in the November 17, 2020 text message leads to a website owned or operated by or on behalf of Defendant where cars can be purchased:



30. At no point in time did Plaintiff provide Defendant with her prior express written consent to be contacted by telemarketing calls or telemarketing text messages using an ATDS.

31. Plaintiff further told Defendant on or about May of 2020 to stop calling her.

32. Notwithstanding, Plaintiff continued to receive unsolicited calls and text messages from Defendant.

33. The failure to stop calling is indicative of Defendant's failure to implement a written policy for maintaining a do-not-call list and to train its personnel engaged in telemarketing on the existence and use of the do-not-call-list.

34. Plaintiff has never purchased anything from or transacted with Defendant.

35. Plaintiff received more than one solicitation call (including text message call) in the time period beginning more than three months after any inquiry or application regarding Defendant's products and services.

36. Defendant used an ATDS to place the calls to Plaintiff.

37. The impersonal and generic nature of Defendant's text message, demonstrates that Defendant utilized an ATDS in transmitting the messages. The messages include no personal identifiers outside of her first name and are formatted in a generic manner.

38. The inclusion of Plaintiff's first name in the text message is an attempt by Defendant to trick Plaintiff into believing that the message is personalized when in reality the ATDS that Defendant used is simply including potential customer data, like Plaintiff's name, automatically in messages sent.

39. The text message also includes instructions on how to respond in manner that the ATDS will understand. As an example, the text message states "Message HELP if you have any questions or would like to set your appointment, STOP to opt out."

40. Additionally, upon information and belief, the number used by Defendant to send Plaintiff text messages was the short-code 42277 which appears on drivetime.com. A short code is a standard 5-digit code that enabled Defendant to send SMS text messages *en masse*, while deceiving recipients that the message was personalized and sent from a telephone number operated by an individual.

41. Upon information and belief, Defendant caused similar text messages to be sent to individuals residing within this judicial district.

42. Upon information and belief, to place the calls and text messages, Defendant used a software suite (the Platform") that permitted Defendant to transmit bulk SMS text messages and place mass calls. Systems like the Platform utilized by Defendant have the capacity to transmit thousands of texts messages and calls per second and are technologically more sophisticated in their availability to transmit messages and calls than a traditional smartphone.

43. The Platform utilized by Defendant is an ATDS because it has the capacity to (1) store telephone numbers; (2) using a random or sequential number generator.

44. The Platform utilized by Defendant is also an ATDS because it has the capacity to (1) produce telephone numbers; (2) using a random or sequential number generator.

45. For example, the Platform has the capacity to indefinitely store telephone numbers within a computer database for subsequent dialing.

46. Further, the Platform has the capacity to utilize a random and sequential number generator in the storage of those numbers, and does in fact utilize said number generator for a variety of functions including, but not limited to, the selection and creation of SMS packets containing the target telephone numbers to be dialed by the Platform, as well as the sequential and/or random selection of telephone numbers to be dialed from a preselected stored list of numbers.

47. A packet in the context of SMS transmission is an envelope of data that contains various instructions and content, including the target cellular telephone number to be dialed, the sequence in which to dial each number, and wording of the message. The following is an example of a typical SMS packet:

> SubmitReq:StatusReportReq=true,Destination=0011166500313,Sequence=35722139,Originator=91157,OriginatorType=3,Body=3:2e:0a11:2f14:2f11:0aDEBIT(p)$1:2e47:0aCHKCARDFOUTSETCROBERTIDUS:0aFornexttransaction:3aReplyN:0aForprevious:3aReplyP,BillingRef=,ClientRef=41883049-1,ProfileId=31174,Operator=31003,Tariff=0,Tag-Program=stdrt,TagChClientID=31174,TagChUsername=corvette_31174,ServiceId=51437,Interface=xml,

48. In the context of SMS packet creation, the Platform utilizes a random and/or sequential number generator to pull and generate telephone numbers from a list of numbers and transfer those numbers to a separate list for the creation of the packets, and ultimately placement into each independent SMS packet.

49. In the context of dialing the numbers, the Platform utilizes a random and/or sequential number generator to pick and designate the sequence in which to dial the telephone numbers. The Platform independently selects the rate and time at which to dial

FIRST AMENDED COMPLAINT
8

each telephone numbers and may temporarily store the packets in a queue when the volume exceeds capacity to deliver them.

50. The Platform also has the capacity to use its random and/or sequential number generator to generate random or sequential identification numbers that it assigns to each SMS packet.

51. Defendant's unsolicited text message caused Plaintiff additional harm, including invasion of privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendant's call also inconvenienced Plaintiff and caused disruption to her daily life.

## CLASS ALLEGATIONS

### PROPOSED CLASS

52. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of themselves and all others similarly situated.

53. Plaintiff brings this case on behalf of the Classes defined as follows:

**ATDS CLASS:** All persons in the United States who from four years prior to the filing of this action: (1) Defendant, or anyone on Defendant's behalf, (2) transmitted a call or text message; (3) using the same type of equipment used to call and text message Plaintiff; (4) to said person's cellular telephone number; (5) where the purpose of the call or text messages was the encouraging the purchase or rental of, or investment in, Defendant's property, goods, or services.

**DO NOT CALL CLASS**: All persons in the United States who from four years prior to the filing of this action: (1) Defendant, or anyone on Defendant's behalf, (2) transmitted a call or text message; (3) more than one time within any 12-month period; (4) to a person who's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (5) where the purpose of the call or text messages was the encouraging the purchase or rental of, or investment in, Defendant's property, goods, or services.

**Internal Do Not Call Class**: All persons within the United States who, within the four years prior to the filing of this Complaint, (1) Defendant or anyone on Defendant's behalf, (2) transmitted a call or text message; (3) where the purpose of the call or text messages was the encouraging the purchase or rental of, or investment in, Defendant's property, goods, or

services, (4) to said person's residential telephone number; (5) after the person made a request to Defendant to not receive future communications.

54. Plaintiff reserves the right to modify the Class definitions as warranted as facts are learned in further investigation and discovery.

55. Defendant and its employees or agents are excluded from the Classes. Plaintiff does not know the number of members in the Classes but believes the Classes members number in the several thousands, if not more.

### NUMEROSITY

56. Upon information and belief, Defendant has placed automated calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

57. The exact number and identities of the members of the Class are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

### COMMON QUESTIONS OF LAW AND FACT

58. There are numerous questions of law and fact common to members of the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the members of the Class are:

   a) Whether Defendant made non-emergency calls to Plaintiff's and Class members' cellular telephones using an ATDS;

   b) Whether Defendant can meet its burden of showing that it obtained prior express written consent to make such calls;

   c) Whether Defendant's conduct was knowing and willful;

   d) Whether Defendant initiated telemarketing calls to telephone numbers listed on the National Do Not Call Registry;

   e) Whether Defendant is liable for damages, and the amount of such damages; and

       f) Whether Defendant should be enjoined from such conduct in the future.

59. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits calls to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

60. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

61. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE

62. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

63. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## COUNT I
### Violations of the TCPA, 47 U.S.C. § 227(b)
### (On Behalf of Plaintiff and ATDS Class)

64. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

65. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

66. The TCPA defines an "automatic telephone dialing system" (hereinafter "ATDS") as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id*. at § 227(a)(1).

67. Defendant – or third parties directed by Defendant – used an ATDS to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class defined below.

68. These calls were made without regard to whether or not Defendant had first obtained express permission from the called party to make such calls. In fact, Defendant did not have prior express written consent to call the cell phones of Plaintiff and the other members of the putative Class with telemarketing calls using an ATDS when its calls were made.

69. Defendant has, therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using an ATDS to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express written consent.

70. Defendant knew that it did not have prior express written consent it required to make these telemarketing calls using an ATDS, and knew or should have known that it was using equipment that at constituted an ATDS. The violations were therefore willful or knowing.

71. As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the members of the Class are also entitled to an injunction against future calls. *Id*.

## COUNT II
### Violations of 47 C.F.R. § 64.1200
**(On Behalf of Plaintiff and the ATDS Class)**

72. Plaintiff re-alleges and incorporates the allegations of paragraphs 1-63 as if fully set forth herein.

73. It is a violation of the TCPA regulations promulgated by the FCC to "initiate any telephone call…using an automatic telephone dialing system…To any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." 47 C.F.R. § 64.1200(a)(1)(iii).

74. Additionally, it is a violation of the TCPA regulations promulgated by the FCC to "[i]nitiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system…other than a call made with the prior express written consent of the called party or the prior express consent of the called party when the call is made …" 47 C.F.R. § 64.1200(a)(2).

75. Defendant transmitted calls that included or introduced an advertisement or constituted telemarketing using an ATDS to the cellular telephone numbers of Plaintiff and members of the putative class without their prior express written consent.

76. These calls were made without regard to whether Defendant had first obtained express permission from the called party to make such calls. In fact, Defendant did not have prior express written consent to call the telephones of Plaintiff and the other members of the putative Class when its calls were made.

77. Defendant has, therefore, violated § 64.1200(a) by using an ATDS to place

calls that introduced an advertisement or constitute telemarketing to the cellular telephones of Plaintiff and the other members of the putative Class without their prior express written consent.

78. Defendant knew that it did not have prior express written consent to make these calls, and knew or should have known that it was using an automatic telephone dialing system. The violations were therefore willful or knowing.

79. As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls. *Id*.

80. Because Defendant knew or should have known that Plaintiff and the other members of the putative Class had not given prior express consent to receive its messages to their telephones the Court should treble the amount of statutory damages available to Plaintiff and the other members of the putative Class pursuant to § 227(b)(3) of the TCPA.

## COUNT III
### Violations of 47 U.S.C. § 227 and 47 C.F.R. § 64.1200
**(On Behalf of Plaintiff and the Do Not Call Registry Class)**

81. Plaintiff re-alleges and incorporates the allegations of paragraphs 1-63 as if fully set forth herein.

82. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

83. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

84. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall

initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

85. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

86. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

87. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

88. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## COUNT IV
### Violations of 47 U.S.C. § 227 and 47 C.F.R. § 64.1200
**(On Behalf of Plaintiff and the Internal Do Not Call Class)**

89. Plaintiff re-alleges and incorporates paragraphs 1-63 as if fully set forth herein.

90. In pertinent part, 47 C.F.R. § 64.1200(d) provides:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
>
> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

91.  Under 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

92.  Plaintiff and the Internal Do Not Call Class members made requests to Defendant not to receive future calls on their cellular telephone numbers from Defendant.

93.  Defendant failed to honor Plaintiff and the Internal Do Not Call Class members' opt-out requests.

94.  Defendant's refusal to honor opt-out requests is indicative of Defendant's failure to implement a written policy for maintaining a do-not-call list and to train its personnel engaged in telemarketing on the existence and use of the do-not-call-list.

95.  Thus, Defendant has violated 47 C.F.R. § 64.1200(d).

96.  Pursuant to section 227(c)(5) of the TCPA, Plaintiff and the Internal Do Not Call Class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation.

97.  As a result of Defendant's knowing or willful conduct, Plaintiff and the Internal Do Not Call Class members are entitled to an award of $1,500.00 in statutory damages per violation.

98.  Plaintiff and the Internal Do Not Call Class members are also entitled to and seek injunctive relief prohibiting Defendant's illegal conduct in the future, pursuant to section 227(c)(5).

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order declaring that Defendant's actions, as set out above, violate the TCPA;

b) An order certifying this case as a class action on behalf of the Classes as defined above, and appointing Plaintiff as the representative of the Classes and Plaintiff's counsel as Class Counsel;

c) An injunction prohibiting Defendant from initiating calls to telephone numbers listed on the National Do Not Call Registry, requiring Defendant to obtain prior express written consent prior to placing telemarketing calls using an ATDS, mandating Defendant to honor opt our requests and maintain an internal Do Not Call list.

d) As a result of Defendant's negligent violations of 47 U.S.C. §§ 227, *et seq.*, and 47 C.F.R. § 64.1200, Plaintiff seeks for herself and each member of the Class $500.00 in statutory damages for each and every violation pursuant to 47 U.S.C. § 227(b)(3).

e) As a result of Defendant's knowing and/or willful violations of 47 U.S.C. §§ 227, *et seq.*, and 47 C.F.R. § 64.1200, Plaintiff seeks for themselves and each member of the Class treble damages, as provided by statute, up to $1,500.00 for each and every violation pursuant to 47 U.S.C. § 227(b)(3).

f) Such further and other relief as the Court deems necessary.

**JURY DEMAND**

Plaintiff hereby demand a trial by jury.

**DOCUMENT PRESERVATION DEMAND**

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with Defendant and the calls as alleged herein.

Respectfully submitted,

Dated: May 24, 2021

By: /s/ Ignacio Hiraldo
Ignacio Hiraldo, Esq.
(*pro hac vice*)
IJhiraldo@Hiraldolaw.com
**IJH Law**
1200 Brickell Ave.
Suite 1950
Miami, FL 33131
E: IJhiraldo@IJhlaw.com
T: 786-496-4469

*Attorney for Plaintiff and the Proposed Class*